28 January 2000

No. 2--99--0368

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

NORTHERN TRUST BANK/LAKE FOREST, ) Appeal from the Circuit

N.A., as Trustee, Under Trust ) Court of Lake County.

Agreement No. 8333, dated )

August 13, 1987; L.B. ANDERSEN )

AND COMPANY, INC.; DANIEL B. ) 

LIGHT AND LEAH RAE LIGHT; and )

WILLIAM McLAUGHLIN, )

)

Plaintiffs-Appellants, )

) 

v. ) ) No. 96--MR--399

)

THE COUNTY OF LAKE, ) 

) 

Defendant-Appellee ) 

) 

(The Village of Mundelein, ) Honorable

Intervenor and Defendant- ) John R. Goshgarian,

Appellee).  ) Judge, Presiding.

_________________________________________________________________

JUSTICE INGLIS delivered the opinion of the court:

Following a bench trial, plaintiffs, Northern Trust Bank/Lake Forest, N.A., as trustee, under trust agreement No. 8333, dated August 13, 1987, L.B. Andersen & Co., Inc., Daniel B. Light, Leah Rae Light, and William McLaughlin, appeal the judgment entered in favor of defendants, County of Lake (County) and the Village of Mundelein (Village).  
We affirm.

Plaintiffs’ property consists of 266 acres located in unincorporated Fremont Township
.  The property lies west of Route 60/83, bounded on the south by Hawley Street and the north by Route 176.  The property is contiguous to the Village’s western boundary.  Plaintiffs’ property is currently zoned "countryside."
  It contains some farms and an area used for a hunting club.  
The property immediately to the east of the subject property is a forest preserve golf course.  To the northeast is an office building, proposed shopping center, an existing shopping center, and a gas station.  A cemetery and church lie to the north of the property.  Northwest of the property is an area known as the Ivanhoe Club.  Located contiguous to and immediately to the west of the property is the Towne property, which has been rezoned "suburban."  South of the property is a residential development known as Steeple Chase, which contains a golf course that wraps around the development.  

Plaintiffs filed an application to rezone their property to "suburban."  
Suburban zoning allows an owner to develop a mixture of uses, including industrial, residential, or commercial, permitting multifamily developments, multiplex developments, and single-family developments.  
The County denied plaintiffs’ petition to rezone.

Following the denial of their petition by the County,
 plaintiffs challenged the validity of the zoning ordinance, requesting the trial court to set aside the ordinance.  Plaintiffs submitted to the trial court a residential development plan for the subject property consisting of 662 single-family, multiplex and multifamily dwellings
.  The trial court allowed the Village to intervene as a party defendant. 
 The trial court determined that the proposed use was unreasonable and refused to set aside the ordinance.  Plaintiffs appeal from the judgment of the trial court, contending that the County’s refusal to rezone the property from countryside to suburban was arbitrary, capricious, and unreasonable, that it constituted unlawful discrimination, and that the presumptive validity of the ordinance has been dissipated.  Plaintiffs also contend that the trial court erred in allowing the Village to intervene.  We will recite the specific facts as they relate to the issues.

Preliminarily, however, we must address the following motion taken with the case.  Defendants’ motion seeks to strike portions of plaintiffs’ reply brief.  Defendants argue that plaintiffs’ reply brief contains maps that should not be considered because they are outside the record on appeal and that plaintiffs have waived their right to rely on the case of 
Continental Homes of Chicago, Inc. v. County of Lake
, 37 Ill. App. 3d 727 (1976), because they raised it for the first time in the reply brief.  Plaintiffs respond that the maps are not to be used to supplement the record on appeal.  Rather, plaintiffs attached the maps to assist this court in understanding the legal description in the 
Continental Homes
 case.  Plaintiffs further respond that they cited the 
Continental Homes
 case in their reply brief to support their argument that the proposed plan was not too dense and was compatible with the land uses of nearby properties.  These points were raised by plaintiffs both before the trial court and in their brief on appeal and, therefore, plaintiffs argue that they are not waived.  Plaintiffs further argue that defendants cited the 
Continental Homes
 case in their brief in support of their argument that a governmental body may reasonably restrict increases in population density.  After due consideration, we agree with plaintiffs and therefore deny defendants’ motion to strike portions of plaintiffs’ reply brief.

We next address whether the trial court erred in allowing the Village to intervene.  The subject property is located outside the Village’s boundaries.  Plaintiffs argue that, in order to have standing, the Village must present evidence of a direct injury.  Plaintiffs contend that the Village failed to present evidence to show that it would be directly injured.  

We first note that the allegations of an applicant’s petition to intervene are to be taken as true in determining whether the interests of the applicant are sufficient.  
Redmond v. Devine
, 152 Ill. App. 3d 68, 74 (1987).
  Thus, the Village need only allege sufficient allegations to show that it could be injured.
  

Under Illinois law, a municipality has standing to challenge a zoning ordinance that affects land outside its boundaries if it has a real interest in the subject matter of the controversy.  
City of West Chicago v. County of Du Page
, 67 Ill. App. 3d 924, 926 (1979) (nearest municipality
 located within 1½ miles
 from subject property).  The decision to grant a petition to intervene is a matter within the trial court’s discretion, and its decision will not be disturbed absent an abuse of discretion.  
Redmond
, 152 Ill. App. 3d at 74.   

In the present case, the property is in an unincorporated area of Lake County, approximately 266 acres in size, and contiguous to the Village’s western boundary; the Village is the nearest municipality.
  Additionally, the density proposed by plaintiffs of four units per acre is inconsistent with the Village’s comprehensive plan of one unit per two acres.  
The Village alleged that the proposed development would seriously impact the schools, the traffic, and the police and fire departments.   Based on the above, we do not find that the trial court abused its discretion in permitting the Village to intervene. 

We next turn to plaintiffs’ argument that the zoning ordinance as applied to their property is arbitrary and unreasonable.  A party attacking a zoning ordinance must first establish the invalidity of the existing zoning ordinance and then prove that the proposed use for the property is reasonable.  
Glenview State Bank v. Village of Deerfield
, 213 Ill. App. 3d 747, 758 (1991).  
Plaintiffs argue that, because the trial court found that the existing zoning was invalid, we need only address whether the trial court’s finding that plaintiffs’ proposed use of the subject property was unreasonable was against the manifest weight of the evidence.  We disagree.

Although the trial court acknowledged that "to some degree the County’s position is that [the subject property is] just in a classification as a holding classification," the evidence does not reveal that the trial court determined that the existing zoning was invalid.  Nor does the evidence indicate, as plaintiffs argue, that defendants conceded the invalidity of the existing zoning.  

Moreover, a zoning ordinance, as a legislative judgment, is presumptively valid.  
La Salle National Bank v. County of Cook
, 12 Ill. 2d 40, 46 (1957).  If there is room for a legitimate difference of opinion concerning the reasonableness of an ordinance or if the question of reasonableness is fairly debatable, courts will not interfere with the legislative judgment.  
Glenview State Bank
, 213 Ill. App. 3d at 759.  The party challenging the zoning bears the burden of proving by clear and convincing evidence that the application of the ordinance to the property is unreasonable and arbitrary and bears no substantial relation to public health, safety, morals, or welfare.  
Cosmopolitan National Bank v. County of Cook
, 103 Ill. 2d 302, 310 (1984).  The trial court did not make a specific finding that the zoning ordinance was invalid, and nothing in the trial court’s analysis or judgment indicates that the evidence produced at trial overcame the presumptive validity of the existing zoning of the property.  Consequently, we conclude that the trial court determined that the ordinance was valid.

In deciding whether the ordinance is valid, courts consider the following factors:  (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of the value of plaintiffs’ property promotes the health, safety, morals, or general welfare of the public; (4) the relative gain to the public compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; (6) the length of time the property has been vacant as zoned, considered in the context of land development in the vicinity; (7) community need for the proposed use; and (8) the care with which the community has undertaken to plan its land use development.  
La Salle National Bank
, 12 Ill. 2d at 46-47; 
Sinclair Pipe Line Co. v. Village of Richton Park
, 19 Ill. 2d 370, 378 (1960).
 

A reviewing court cannot reverse a trial court’s findings of fact unless the findings are against the manifest weight of the evidence.  
Cosmopolitan National Bank
, 103 Ill. 2d at 318.  The trier of fact is in a better position to determine the credibility to be accorded witnesses and their opinions.  
Glenview State Bank
, 213 Ill. App. 3d at 759. 
 A reviewing court should not reverse a trial court simply because it might have reached a different conclusion based on conflicting evidence presented at trial.  
Glenview State Bank
, 213 Ill. App. 3d at 759-60.  Accordingly, we first examine whether 
the trial court’s finding that the ordinance was valid is against the manifest weight of the evidence.

The first factor, the existing uses and zoning of nearby property, is of paramount importance.  
Glenview State Bank
, 213 Ill. App. 3d at 760. 
 
The trial court found that plaintiffs’ proposed mixed residential development of 662 units was not consistent with the surrounding area. 

Plaintiffs argue that there are developments of single-family subdivisions on 6,000-square-foot lots, townhouses, and apartments in Mundelein and the trend of development is west towards the subject property.  Plaintiffs argue further that the trial court improperly considered Route 60/83 as a line of demarcation because land on both sides of the route is planned and developed with suburban-type uses and densities.

Although small portions of Mundelein overlap Route 60/83, the majority of its western boundary is on the east side of the route as it runs in a northwesterly direction.
  
Moreover, the proposed 662-unit development consists of approximately 50% apartments, condominiums, and townhouses and 50% single-family residences on lots ranging in size from 5,000 square feet to 
8,400 square feet.  
The evidence shows that the minimum-sized lots under the current Mundelein zoning ordinance are 10,000 square feet and those lots that have been developed in the last three to five years are on Mundelein’s western borders.

Further, the density of the proposed development is substantially greater than the densities in the existing subdivisions in the area.  The proposed development has over three times as many units as the largest existing development in the township. 
 The existing developments in the area consist of single-

family residences, of which
 the majority are on lots of one or more acres.  The Ivanhoe Development, the southern end of which abuts the north side of Route 176 and lies northwest of the subject property, contains 218 single-family dwelling units consisting of .57 units per acre.  Directly to the south of the subject property is the Countryside Chase golf course, which is part of a development consisting of single-family homes of .19 per acre.  There are no apartments or condominiums in the township. 

Plaintiffs cite 
Continental Homes
 in support of their argument that the property is clearly suitable for a greater density of development.  They assert that 
Continental Homes
 involved the same property and the mixed residential use proposed in that case was very similar to the proposed use in the present case.  Both uses have over 50% townhomes, apartments, and single-family homes on small lots.  However, the density of the proposed use in the 
Continental Homes
 case of 4.5 dwelling units per acre is much more intense than the use proposed by plaintiffs here.  They assert that the area surrounding the property then, in 1976, is similar to the existing uses today.  We reversed the trial court, finding that the plaintiffs clearly demonstrated that the proposed use was compatible with surrounding uses in zoning existing and proposed, and that the property was clearly suitable for the proposed purpose.  
Continental Homes
, 37 Ill. App. 3d at 735.  Because these are the same properties and because the relevant factors are substantially similar, plaintiffs argue that we should make the same finding in the present case. 
 We disagree.

Continental Homes
 was decided in 1976, when the property
 surrounding the subject property was predominantly used for agriculture.  Then, the only area used for housing in the township centered around Sylvan Lake.  
Continental Homes
, 37 Ill. App. 3d at 729.
 Therefore, the low density, single-family residential developments prevalent today did not exist then.  Moreover, the plaintiffs in 
Continental Homes
 submitted a development plan to the planning commission, which approved the plaintiffs’ proposal conditioned on their satisfying numerous conditions.  The Lake County Zoning Board of Appeals then unanimously accepted the recommendations of the commission and approved the plaintiffs’ plan subject to the conditions.  The Lake County Board of Supervisors voted to approve the special use permit requested by the plaintiffs.  
Continental Homes
, 37 Ill. App. 3d at 728-29.
  However, plaintiffs were denied relief only because of the three-

fourths majority requirement imposed on the board of supervisors by the filing of an objection by the Village.  
Continental Homes
, 37 Ill. App. 3d at 735.
  In the present case, plaintiffs did not submit a development plan to the county board when they petitioned to rezone the subject property, and their petition was denied.  Therefore, we find plaintiffs’ reliance on 
Continental Homes
 unpersuasive.

Plaintiffs argue that it is inconceivable that the proposed plan is unreasonable when the Towne property, which is immediately adjacent to the southwest corner of the subject property, is zoned suburban.  The evidence reveals that the plan presented by the owners of the Towne property showed a gross density of less than one dwelling unit per acre.  Thus, this would be in character with the low-density, single-family residential uses established in the area.  Given these facts, we cannot say the trial court’s finding that the first factor weighed in favor of the current zoning classification was against the manifest weight of the evidence.

Plaintiffs contend that the trial court failed to make a finding as to the second factor, the extent to which property values are diminished by the particular zoning restrictions.  This contention is without merit.  The trial court stated that it thought that both sides did not consider the second factor to be very conclusive.  Additionally, the second factor is generally not considered persuasive because in virtually all reclassification cases property would be worth more.  
Glenview State Bank
, 213 Ill. App. 3d at 761.
  Plaintiffs contend that the unrefuted evidence reveals that the difference between the subject property as zoned and the value if the property were put to the proposed use is millions of dollars.  Again, this is not necessarily persuasive because plaintiffs acquired the property with full knowledge of its zoning classification.  
Glenview State Bank
, 213 Ill. App. 3d at 762.
  

Plaintiffs have merged their argument concerning the third and fourth factors, which require the court to weigh the effects of the zoning restriction as it promotes the health, safety, morals, or general welfare of the public against the hardship imposed on the property owners.  See 
Oliver Construction Co. v. Village of Villa Park
, 257 Ill. App. 3d 750, 755 (1994).  Plaintiffs argue that there is no gain to the public by a continuation of the present  countryside zoning classification.  Plaintiffs contend that the development of the subject property for a mixed-use residential development would not have any adverse impact on the surrounding property, and defendants produced no evidence that the proposed use would have an adverse impact on the area.

The trial court considered that the third and fourth factors  were affected by the density arguments, which it believed were a legitimate public concern.  We agree.  Density is a legitimate concern in a zoning case and an adequate basis for classification.  
Hoekstra v. City of Wheaton
, 25 Ill. App. 3d 794, 797 (1975).  As stated above, the evidence supports that the proposed use would be far more dense than the existing single-family developments on nearby properties.

Plaintiffs contend that the suburban classification permits a density in excess of 2.5 units per acre and lot sizes of less than 5,000 square feet and, therefore, the argument that the proposed use is overly dense and the lot sizes are too small has no merit.  However, the possibility that the suburban classification permits a greater density together with plaintiffs’ failure to submit a development plan to the county board when they requested rezoning were valid reasons for the county board to refuse to approve the request.  Further, the introduction into the township of apartments, condominiums, and single-family lots of 5,000 square feet as proposed by plaintiffs would start to change the character of the area. Finally, the trial court considered evidence of problems with the proposed spray irrigation sewage treatment system proposed by plaintiffs as well as problems associated with school crowding.  While these are not determinative factors, they nevertheless were properly
 considered. 

As to the fifth factor, plaintiffs maintain that, because defendants presented evidence that the highest and best use of the subject property would require a change in zoning, defendants concede that the use allowed under the suburban zoning is reasonable.  We disagree.  Until an appropriate plan is developed in character with the zoning and use of nearby properties as contemplated by the Lake County framework plan and the Village’s plan, countryside is an appropriate zoning.  

The sixth factor is
 the length of time the subject property has been vacant as zoned in the context of the land development in the vicinity.  Plaintiffs argue that most of the properties surrounding the subject property have been developed over the last decade and there is a large increase in the demand for residential development.  However, plaintiffs must establish that the subject property is unsaleable, vacant, or underdeveloped because of the existing zoning classification.  
State Bank v. City of Chicago
, 287 Ill. App. 3d 904, 916 (1997).  Although plaintiffs have attempted to sell the property, they currently are not offering it for sale.  Nor have plaintiffs attempted to sell or develop the property with a proposed development in character with the surrounding properties.  That the property has remained vacant does not establish that the zoning applicable to it is improper.  
Georgen v. Village of Mount Prospect
, 65 Ill. App. 3d 512, 524 (1978).

Regarding the seventh factor, both Lake County and the Village have comprehensive plans covering the area in which the subject property is located.  The adoption of a comprehensive plan that incorporates valid zoning goals increases the likelihood that the zoning of a particular parcel in conformity therewith is not arbitrary or unrelated to the public interest.  
Wilson v. County of McHenry
, 92 Ill. App. 3d 997, 1002 (1981).  

The Lake County 1989 framework plan shows the property zoned as countryside.  In 1994, Lake County amended the framework plan designating the area, including the subject property, as suburban in anticipation of the property being developed without sewer on lots of 40,000 square feet or more or annexed by the Village and developed with sewer on lots of one-half acre or more.  The Village’s 1990 framework plan designated the subject property and surrounding area as single-family residential with sewer.  The Village’s population projection was based on lots ranging in size from one-half acre to three acres.  The 1995 "West Side Update" to the Village’s comprehensive plan shows the area west of the Village, including the subject property, as estate, which permits one single-family residential unit per two acres without sewer.  It is apparent that neither plan contemplated the area as being served with sewers or with residential densities as great as plaintiffs’ proposed plan.

Plaintiffs argue that, if Lake County wished to restrict the density and size of lots on their property, it would have designated their property as estate when it amended the framework plan in 1994.  We disagree.  It is apparent that, at that time, the County attempted to incorporate the Village’s 1990 comprehensive plan to designate the area single-family residential with sewer on lots ranging from one-half acre to three acres.  The following year, the Village updated its comprehensive plan designating the subject property as estate.  Thus, the County’s 1994 update does not contemplate the Village’s 1995 updated plan.

Plaintiffs further assert that defendants failed to present any credible evidence to show why the Lake County Board (Board) did not rezone the property suburban as designated in the 1994 framework plan.  At that time, as stated above, the County anticipated that the property would be developed without sewer on lots of 40,000 square feet or more or annexed by the Village and developed with sewer on lots of one-half acre or more.  The Village then later changed the plan from single-family residential with sewer to estate without sewer.  Moreover, plaintiffs did not submit a development plan to the Board when they requested rezoning from countryside to suburban and did not propose a specific use for their property.  Further, when the Board considered the rezoning of the subject property, the Village filed a protest indicating its resolve to have the property designated estate.  Accordingly, we find that the trial court properly concluded that this factor favors defendants.

Under the eighth factor, plaintiffs assert that the community growth shows a need for various types of housing and that the trend extends in a northwesterly fashion.  While there exists evidence of such a trend, we agree with defendants that, at present, there are no public sewers and other municipal services indicating a need and market for the type of housing proposed by plaintiffs.  Further, the lack of interest by developers strongly suggests that the trend is not as great as plaintiffs assert.

The last factor concerns the highest and best use.  Highest and best use is defined as that use that effectively utilizes a parcel of land and at the same time is in harmony with the growth goals and planning policies of the community.  See 
Harvard State Bank v. County of McHenry
, 251 Ill. App. 3d 84, 88 (1993).  
At trial, plaintiffs’ expert planner and expert appraiser each testified that the proposed 662-unit, mixed residential development is the highest and best use of the subject property.  Defendants’ expert testified that a low-density development, such as that shown by the alternative plan submitted, with 90 single-family residential lots and 19 business park lots, is the highest and best use of the property.  In this case, the trial court found the testimony of defendants’ expert more persuasive, which we will not disturb.  Moreover, where opinions differ as to the reasonableness of the zoning restriction, the court must defer to the legislative judgment.  
State Bank
, 287 Ill. App. 3d at 918.

Plaintiffs argue that the trial court improperly considered defendants’ proposed plan for an alternate use of the subject property.  We disagree.  The admissibility of evidence is a matter within the trial court’s discretion, and the ruling of the trial court will not be overturned unless it is an abuse of discretion.  
Yamnitz v. William J. Diestelhorst Co.
, 251 Ill. App. 3d 244, 249-

50 (1993).  In this case, we cannot conclude that the trial court abused its discretion.

Our determination is grounded on the basis that the alternate use was offered as a reference for assessing the reasonableness of plaintiffs’ proposal and that plaintiffs have other options that are in character with the established uses in the area that would yield a reasonable return on their investment.  Alternative plans proposed by defendants, if reasonable, may be a factor in determining the central question of whether the plaintiffs’ proposed use is an appropriate use of the subject property.  
Glenview State Bank
, 213 Ill. App. 3d 747; 
Gunderson v. Village of Hinsdale
, 156 Ill. App. 3d 92 (1987). 
 We believe that, under the circumstances, the Village was justified in presenting an alternative use. 

Plaintiffs’ reliance on 
St. Lucas Ass'n v. City of Chicago
, 212 Ill. App. 3d 817 (1991), 
Aurora National Bank v. City of Aurora
, 41 Ill. App. 3d 239 (1976), and 
Stalzer v. Village of Matteson
, 14 Ill. App. 3d 891 (1973), does not support their position that an alternative use may not be considered.  Rather, these cases hold that a party challenging the validity of an ordinance is not obligated to disprove the validity of all intermediate zoning classifications.
 

We next address plaintiffs’ contention that the County unlawfully discriminated against them by refusing to rezone their property from countryside to suburban.  Here, the Board’s decision to rezone the Towne property was induced by a specific land use proposal showing a gross density of less than one dwelling unit per acre.  The Board then had before it a land use proposal that would be in character with the established uses in the area and consistent with the Village’s comprehensive plan. In plaintiffs’ case, however, the Board had no land use proposal or plan from plaintiffs when plaintiffs petitioned for rezoning.  Plaintiffs submitted these plans after they filed this suit.  Thus, the Board never saw any of these plans.  Under these circumstances, the Board was justified in refusing to rezone plaintiffs’ property.
  We find no discrimination.  

From our careful review of the record, we conclude that the trial court’s finding that the existing zoning was not unreasonable was not against the manifest weight of the evidence.  We need not address whether the proposed use for the subject property is reasonable because of our prior conclusion that the zoning ordinance is valid.  See 
Glenview State Bank
, 213 Ill. App. 3d at 765.  However, based on this record, we are satisfied that the trial court’s determination that the proposed use was not reasonable for the subject property was not against the manifest weight of the evidence.  We have reviewed plaintiffs’ remaining contentions and find them to be without merit. 

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

BOWMAN, P.J., and GEIGER, J., concur.